317-0250, the County of Will, appellant, by John Foreman v. Diana Peterson, as trustee, et al., at Apple East by Stephen Hull. Counsel, you may proceed. Thank you, sir. May it please the Court, Counsel. Your Honor, I'm John Foreman. I'm the Special Assistant State Attorney for the County of Will. And I'm representing the County here today with regard to this appeal. Judges, justices, this matter arises from the granting of a purse with regard to this eminent domain matter. And the issue, as I see it, is whether or not there is sufficient evidence of a clear abuse of power by Will County in coming up with their plans to reconstruct a bridge that is approximately 50 to 60 years old on Cedar Road in Will County and to make it a four-lane bridge, even though at this point... Four-lane or five-lane? Well, judges, it would be the size of five lanes because of the 10-foot shoulders. But the roadway, as planned, would be a four-lane with a middle turn lane. So on the bridge, we don't need a middle. Okay. And I think the law is clear that the county legislature has the authority to do this, exactly what it's doing, unless it clearly abuses the process. In this case, what we have is we've got all of the properties. I think there are three other properties that have been purchased. This is a parcel. Through eminent domain or voluntary sales? I believe that those, well, they did not go through the process of eminent domain. So there was no complaint filed, Your Honor. So this one did not settle. So we filed our complaint, and, of course, a traverse was filed. And I think that in this case, what we have is somebody who doesn't want this piece of property taken from their land, and what they came up with was, well, you don't need it because look at what the planning documents show for Will County, what the highway documents show. The highway documents, Your Honors, in my opinion, are a red herring. The 2030 plan, the 2040. The 2040 plan. Yes, 2040 plan. In my opinion, those are. Now explain that to me. The 2040 plan, what's the, why is it called the 2040 plan? It's called the 2040 plan, Your Honor, because what the county is doing is looking forward to the future for what it believes are going to be transportation needs based upon what it can tell right then when it makes the plan, not a week after it makes that 2040 plan or two years after it makes the 2040 plan. It's looking at the time that it presents that 2040 plan, what the current needs are. In this case, what we had was. Let me understand. You know, when you look at the 2040 plan, it's like looking into a crystal ball and saying, in 2040, we're going to need this much roadway because we estimate there's going to be this much traffic, et cetera. That is correct. So it's futuristic by 2040. It's looking into the future, and it's looking at really large concepts. I know we have one on Weber Road at Route 55. That's a big concept that had to be done. This one, Your Honors, I submit, is a concept that has not come due yet but was due and became not due as a result of the 2008 economic crisis where real estate values fell. So there had been some discussion of building along Cedar Road. That fell through along with all over the state. We had development projects go through. So the future isn't quite as easy to forecast. That's my point, Your Honor. That's my point, Your Honor. The future isn't as easy to forecast. We could find out tomorrow morning that somebody wants to build along Cedar Road, and all of a sudden this will become a priority. So as of the time that we had our argument on the traverse, it was not listed as a priority, which is what the defendants focused on, that the court, they attempted to advise the court that it wasn't necessary to do this now and that they were asking for too much property. In terms of the too much property aspect of this, this is a strip that is going to, when the roadway is widened, this is going to lead to, so they won't have to build further out onto that bridge for the entryway to the bridge. So those are the pieces that the county is looking to acquire, this strip piece along Cedar Road and on the defendant's premises. It's not near their house. It's not near their buildings. It is a beautiful piece of land. I thought it was going to take half of their setback. Judge, I don't recall that that was in the evidence in terms of the setback, but I do know that Will County has provided recently that there is a fairly new ordinance that any sort of zoning issues that come about because of eminent domain are going to be grandfathered, so there will be no zoning issues regarding parking, regarding any of those matters in the future. Oh, you mean, in other words, you're not going to, after you take the person's land, you're not going to say, oh, by the way, you're in violation of zoning because of setback. Absolutely. Meanwhile, you're sitting on your front porch and it's a lot closer than it used to be. Yes. So is this part of their lawn, their front lawn? I believe it's part of the side lawn. Okay, and once eminent domain is allowed, Will County can exercise control over that. That is correct, Your Honor. We're looking for a dedication of that piece. The fee would remain with the defendant. So for the next 20 years, you can do what you want with that property. We could, well, Your Honor, for the next however long it takes for the road to become something that is necessary, I think the object is to build the bridge, and that piece of property has work done on it, so it will be actually part of that bridgeway. It won't be part of a new roadway yet. Do you have plans to build the road? At this point, there are no plans, Your Honor. But as the law suggests on this, we have, as a legislature, as a county legislature, this legislature has the right to plan for future needs. And it's only to be disturbed if it's clearly abusive. We don't have any evidence that anything that the county was doing here with this project was clearly abusive. What they're doing is they're trying to avoid constructing this bridge twice. As I mentioned at the outset, this is an old bridge that has to be replaced. That was brought up at the hearing. I believe the trial court made a statement that, well, if you only need two lanes now, just build a two-lane bridge. And if you need five lanes later, then you build a five-lane bridge, which I submit is not what the law allows for a court to put its feeling as to how the county should be doing its eminent domain acquisitions. Well, that's a separation of powers. Yes. That's what you're making. Absolutely. The political will of the people is expressed in the legislature. Now we have to deal with the law. Yes. As to whether or not that political will of the legislature runs in violation of the law. That's why we're here. That's why we're here today. You're correct. And it does not run contrary to the law because the law is fairly simple. And I cite the leading Supreme Court case, which is Chicago v. Vicaro. And in Chicago v. Vicaro, the court is clear that the general rule, and this is on page 772 of the Northeast Second, where the legislature is delegated to a corporation, the authority to exercise the power of their own domain, the corporation also has the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of power granted. What they have not shown, in my opinion, Your Honor, and this is what I'm asking the court to find, is that there was any clear abuse of power. This was not done as a power grab or as a land grab for any wrong or improper reasons. It was done in order to try to save some funds on rebuilding a bridge when the time comes for the highway to be expanded. But you don't have any plans to expand the highway at this point, and you may never. At this point, and I don't think I could say we may never, because I don't believe that the legislature would have done this if they were never going to do this. This is a very, this growth area north of New Atlantic, Illinois, it's all farmland right now. It's going to be big because we've got just above there is Romeoville, and there's boundary agreements being made. There's a lot of development that's going to happen now that our economy is back up. So we're asking this court to reverse the trial court's ruling that found that the traverse should be granted, that there was no, that the court substituted its own opinion of necessity, and we're asking that that be reversed for a jury trial as to what the actual valuation of this parcel is. Are there plans to rebuild two lanes of the bridge at this point in time? No. The plans were to rebuild a bridge because the old bridge needs to be replaced. That's not rebuilding, the plans are to engineer a new bridge. The engineering for the new bridge is a five-lane bridge. Well, it's four lanes and two shoulders. What makes it impossible to repair the two-lane now and then put another two lanes going the other direction at some other point in time? I think the bridge across Route 74 in Rock Island County is going to be replaced just that way, building two lanes at a time. Okay, Justice, I'm not aware of that particular bridge, but in this bridge, this is going over a creek, and the way that roads are built in the state is they stay, at least these old roads like this one, Cedar Road, they're built on the section lines, and the section line for this one goes right where our bridge is. So instead of tearing down the old bridge, because it needs to be torn down, it's 60 years old, instead of tearing down the new bridge and putting up a new two-lane bridge, it'll have to be torn down at some point in the future per what we're looking forward to in our county. Instead of doing that, the county felt, the legislature felt, that it was more appropriate to put in a larger bridge and tie it into when that future occurrence happens. But you don't have plans to build that bridge? We don't have current plans. That is correct. So is there a necessity to replace the bridge that exists if you don't have plans to replace it? Yes. The bridge, and that was testified to by our transportation director, the bridge needs to be replaced because it's not a satisfactory instrument for heavy vehicles driving over it. It's not safe? It's not safe. Is it closed now? No, it's not closed. So you're still allowing traffic to go back and forth? That's my understanding, but it needs to be replaced. Okay, thank you. Thank you. Thank you. You have five minutes to reply. Pardon? You have five minutes to reply. Thank you. Nelson, may I respond? Thank you. May I please report? Mr. Foreman, this is Mr. McCarthy from my office, and my clients are here, Mrs. Peterson and her family are here. My name is Steve Helm. I'm one of the attorneys that was representing Mrs. Peterson in the condemnation case we filed with the Travers, challenging the taking in this particular case. If I may, maybe I'd like to respond to a couple of the questions that came up from the court. First of all, you're correct. The taking in this case brings the residents to within 20 feet of the right-of-way. It formerly was, I think, about 50 feet. In addition to that, when Mr. Foreman said there's no evidence of that, they had attached to their complaint as one of the exhibits and as part of the evidence in the case a copy of the appraisal report. And a copy of the appraisal report clearly sets forth, and that was their appraisal report, and it clearly sets forth what the nature of the taking is, and that's at C-33 of the record. And on that page of the report, on location and size, it makes it clear that the taking extends 52.53 feet from the existing right-of-way into the Peterson property, and that 52.53 extends for a distance, a lineal distance along the roadway of some over 70 feet. In addition to that, their own appraisal talks about the extensive loss of landscaping, the extensive loss of trees. Mrs. Peterson talked about where the stakes were, all the different oak trees that are going to be knocked down as a result of the taking. Mrs. Peterson's lived on the property for some 32 years now. That's been her homestead. So the nature of the taking is significant. It was admitted in the testimony of their engineers in the case that, in fact, there is going to be some significant impact on the landscaping, and there is going to be that setback issue. Now, whether or not the county grandfathers in or determines that it's a legal nonconforming use rather than an illegal nonconforming use is not the issue. The issue really is if she stays there, she's going to be within 20 feet, as opposed to being 50 feet away, plus she's going to have all that intrusion and all the loss of landscaping. If you don't mind, how old is Mrs. Peterson? She's a little older than I am. But I think she's in her 70s. I think she's 74, 75. So is it fair to say there's no plans to build that bridge within her lifetime? Your Honor, that's an excellent question, and that's exactly what's at the crux of this. The county put on Mr. Giesecke, who's the project manager, and who's also the assistant engineer. And what he testified to, Your Honor, was there's not only no plans for the whitening, there's no budget, it's never been studied, their requirement, the process that they normally follow for whitening a road in the county, is a three-phase process that's described in their 2040 plan. And that three-phase project includes hiring engineers, doing a complete study, having a public hearing, preparing a PBR, you know, a development project. They've not even commenced any of those projects. So no resolution, no budget, no study, no plans, no design, nothing. What about the high volume of traffic right now on that road? Is there a high volume of traffic that's becoming bottlenecked at the bridge? No. This is a, as Mrs. Peterson testified, she's been there all this period of time, this is a rural area. And I think as Mr. Foreman just acknowledged, this is a farm agricultural area. The entire area from Highway 6 to the south all the way up to Bruce to the north, which is about four and a half miles, everything on that side of the highway is farm, except for one farmhouse, which was the Anderson property that's on that side. On the east side of Cedar Road from that entire distance, there is a gas station at the corner of Route 6 and Highway 6. And then there's a few scattered residences. There's the Tierling, I think it is, nursery. And then you get to the Peterson property and the Saaz property, and then there's nothing else. Has the bridge ever been closed? I can't. For safety reasons? I can't say. Okay. So we have here under the law a prima facie case that has to be established, correct? Okay. And that has to be established by the government, or if they don't establish that prima facie case, I mean even if they establish the prima facie case, all that does is shifts the burden over to us to show that there's been an abuse. So what's your understanding of their concept of the established prima facie case? I don't think they ever did. I think the evidence is so clear whether they did or they didn't. The evidence is so clear because every one of their witnesses, including Mr. Foreman, the attorney, admitted we have no need for a five-lane bridge or for anything other than replacing the bridge right now. All we're doing is we're doing something now in hopes that in the future we may need to widen Cedar Road. Now, on the issue of whether they establish a prima facie case, I think as you're... So our issue here is really an excessiveness issue. It absolutely is, Your Honor. As we indicated in our briefs, we have no problem with them going in there and replacing that bridge. I mean it's a safety issue. Mrs. Peterson would like to see them do that. The problem is there's just absolutely no evidence. I mean 100% of the evidence in this case is we have no need for a... I mean Mr. Giesecke acknowledged there's absolutely no need for a five-lane bridge or for those shoulders or for the land needed for the shoulders unless we're going to widen Cedar Road. And both Mr. Giesecke and Mr. Gould, the former head of the department, the former engineer, testified that there are no plans for widening Cedar Road. Mr. Gould authenticated. That was a witness. That was evidence that was put in by the county. The 2040 plan, Your Honor, which is the county's long-range transportation study, it's the official act of the county. It specifically says that this transportation plan is based on what we can reasonably anticipate to have the money for up through the year 2040. And so we have a period of time. The lawsuit's filed in... I'm going to the case of the Young Women's Christian Association Springfield where it clearly says that taking can be had by a governmental body only based on fairly anticipated needs of the public. Absolutely, Your Honor. This is a statement by the legislative body in this 2040 plan that these are the anticipated needs of the public up through 2040. Your Honor, that is not only a fair statement, that is 100% accurate, and that, Your Honor, is on page... I wish I could see better. 20... Excuse me just a minute. Young... What page is it? Page 34. Page 34 of the plan. And where it says the WillConnect's 2040 plan, which is what they call this, are investment priorities for county roadways which are physically constrained, which means they are based on reasonably anticipated revenues and expenditures through 2040. So the county plan dovetails exactly with the language in the YWCA case and in Patcaro, and in that case it says... First of all, it says in those two cases,  Number two, it says... Every one of the witnesses presented in this case acknowledged, and it was the county witnesses, acknowledged, we don't have any plans to widen Cedar Road. Mr. Foreman admitted, we don't have any plans now, but when and if those plans come into being, then we're going to try to budget them. I mean, every witness for the county testified, we don't have any budget for it, we don't have a resolution, we don't have any study, we can't say when and if there's going to be a need. So then after the testimony of Mr. Giesecke, Mr. Gould through the stipulated testimony, the introduction of the plan and going through the plan, which Mr. Gould acknowledged was their strategic plan for what's going to happen within the next 25 years, and the plan itself acknowledges that, all the evidence was we really don't have any need for that property yet. They're hoping to have it. And then Mr. Gould said, the only place that Cedar Road widening appears in the plan is on what he called the wish list. And that was the list that's on page 43 or 44 of the plan, which you had on pages 40 and 41 if I remember, you had with and without Ileana. And on both of those lists were the ones that they anticipated would be needed up through the year 2040. Then they had an alternative list in case they got some more revenue that they weren't anticipating. There were eight projects listed on that. Cedar Road's not on that. Then we finally get to what they call the unconstrained list. Those are the projects that sometime in the future maybe we'll get to if we somehow come up with some money that we don't have right now. That's where Cedar Road is listed. That's the only place Cedar Road's listed. So over and over and over again, every county official testified or made statements in this case that we don't need it now. All we're doing is we need to replace the bridge. We've got some money to replace the bridge. So we're going to acquire the land needed for five lanes and shoulders even though we don't have any proof or any evidence that we need it right now. The case is all required that you do need it. Okay, so basically to kind of cut to the chase here, we have a trial judge who makes a ruling that it's not fairly anticipated that this five or four lane median lane structure is needed by the public and it was based on this testimony that was presented. And you're saying that that's not against the manifest way of the evidence for him to conclude such. I am totally saying that, Your Honor, and I'm saying there was no contrary evidence. The only evidence that the county has is the ordinance or the resolution. But the problem with the resolution, when you look at the resolution and Judge Rossi pointed that out, I think on page 73 or 74 of the transcript, he said when you look at that resolution, that resolution is not really that broad. That resolution just says when you look at the resolution, there's only one at the bottom of it. Here's what the now therefore resolve, which typically, at least in my experience, has been if you're going to incorporate the previous whereas's, you say the whereas's previously set forth here are incorporated as findings by the board. It's basically the holding of the ordinance. The holding of the ordinance, exactly. This is the entirety of what the resolution is at the end. Now therefore be it resolved. The Will County Board hereby passes and approves for the Will County State's Attorney's Office to commence with any and all required procedures to condemn the real estate described in the attached list for the purpose of constructing or maintaining a public road which is a public use. That's it. There is no language in that final resolution saying we specifically find that it is necessary to widen the bridge at that location or to widen Cedar Road or to do anything. In fact, they couldn't say that because they know the evidence is totally to the contrary. They need to widen the bridge. They don't need, I'm sorry, they need to repair the bridge and to put in whatever's needed for the two-lane road. And as Judge Rossi indicated, the evidence that he heard in the case, and that was through a question that he asked one of the witnesses. He asked one of their engineers, well, what happens, let's say, if you put in a two-lane bridge and 10 years down the line something happens and you come up with some money and you need to widen Cedar Road. Can you do something with that road? And their engineer, Mr. Gieske, said, well, yes, we can. If we anticipate there might be some future need to widen, we can put extra strength into that two-lane bridge and two-lane road at that location and then we can keep that there and then we can widen at that time. So there isn't any loss. They know, at least they apparently have in their mind, that they might somehow in the future need to do something. They admitted that to the judge. And so Judge Rossi went through and he made very specific findings in this case. There's no need to widen the road. The taking is an excessive amount of land. It's a substantially excessive amount of land. The testimony was all that there's absolutely no proof at all of any necessity and it clearly is an excessive amount and it's an intrusion into Mrs. Peterson's property. Two minutes, please. Thank you. And as the Giriola's case says, we've cited it in our, I think it's Village of Skokie, his findings and his rulings, the only way it can be overturned if it's against the manifest weight of the evidence in the case, there's just no basis based on any of the evidence in this case that there could be any error made by the judge. I mean, the testimony was all that way. One other point. They filed in their reply brief, they listed a whole bunch of cases and tried to argue in effect that look at all these cases, these all show an abuse of discretion or something of that nature. I went through those. Every one of those cases that they listed, and I've got a list of them, I've got them all here but we don't have time to go through every one of them. Every one of those, in there the court ends up saying they put the resolution in, the resolution said it was necessary to do it, we're going to defer to their judgment in the absence of any proof to the contrary, and then they say the property owner offered no evidence. If you go through every one of those cases, that's what happened. So we've got the opposite situation here. They put a resolution in that doesn't really find any necessity to do what they're trying to do here, and it's 100% contrary to what the evidence is. And the county put witnesses on, I put witnesses on, every witness and the county's own plans say you don't need to widen this road and you don't need this land beyond going with just repairing the bridge. We hope they repair the bridge but not to the extent that they're going to destroy her lifestyle for the remaining time that she wishes to live there. Are you happy to answer any other questions? I don't believe there are. Okay, thank you very much. Thank you. Counsel may reply. I was looking. I heard counsel suggest that the court found that there was an excess of taking it, and I'm looking at the court's ruling again. I'm not finding that in here. What the court basically ruled was, was based upon the 2040 plan, that this was too attenuated. That was my understanding of what the court's ruling was at the time of the traverse. It was too attenuated in time because there was not a present need for the roadway. Our position on that time attenuation is that that is not the type of abusive behavior by a legislature that the case law is trying to prevent. The case law is trying to prevent bad faith takings, takings that are done. We know that. Now, going back to that YWCA case. Yes. Okay. Obviously, in a traverse, the standard is you're excessive. You're taking too much. Because we know the main is the constitutional power. Yes, it is. And so we can't argue that. But they would argue that it's excessive. All you have to show is that it's fair anticipation of the needs of the public. Yes. In the future. And that was a finding made by the legislature in there. Well, no, the courts can decide that, whether there's a fair anticipation, fair anticipation, fairly anticipated in the future. Yes. Judge, I understand that that is what that case says. The cases that I've cited suggest that it's got to be something more than a fair anticipation. It's got to be an actual abuse of discretion. It's got to be something that is, and that's that Supreme Court case that I cited, that it's still, I mean, I was just looking at it. I don't believe there's any yellows on it. If you have no need. Pardon? If you have no need for the property at this point. The issue is that the need is anticipated. And that we don't know when that need is going to occur because of the rapid expansion of the county, because of the rapid expansion of, when that 2040 plan was made, we were still in that. But this is where we are. We have evidence here, as opposing counsel correctly points, much of it right there in your hands. Yes. And I think fair reading of the court's decision was looking at that evidence, there's nothing in that evidence that says there's a fair anticipation of the needs of the future to do this act. Which I believe is an error. Of course, that's your argument. Yes. Yes. Okay. So my question is, what's wrong? Why looking at that evidence when we have to go about three columns or three categories that describe what opposing counsel is describing in their 2040 plan, that disappears on an arguable wish list? Yes. Okay. Why? Now the question is, maybe if it were in category one or two or three, that there could be an argument that there's a fair anticipation. How do you say, no, that last column there establishes a fair anticipation of the needs of the future? Judge, because when that plan is put together, that plan doesn't have the force of the law. That plan is simply what it says it is. It's a plan. And at the time the plan was put together, at that time, there was no money coming in. There was no money in the coffers to build Cedar Road. So when there's no – and I think this is in the record – when there's no money set aside to do it, it doesn't make it into the planning stage. No, there's an old saying, if wishes were horses, babies would ride. Yes. Okay. If next week somebody needs that road, some giant development comes into New Blenix and says, we're going to buy this property on Cedar Road, we need to have more traffic ability to go in and out, and we need more lanes, you can rest assured that that money will be sought by Will County to do that, to make sure that the road is put there so that safety is maintained on Cedar Road. Let me interrupt you, though. It's not the developers' needs that drive this equation. It's the public's need, correct? Well, the public needs to be able to get to these areas of large developments. The developers need to have their prospective buyers get to the roadways, but does the public, in the situation this land is in now, does the public have that need? The situation the land is in right now, the answer is no. Yeah. Now, is there anything to prevent the County Board from enacting properly an ordinance with those findings and holding a conclusion that would activate this proposal? Well, Judge, I think that that is not really their – that's not something that should be imposed upon them. I mean, frankly, I think that they have – that legislature has the right to determine what their citizens are requiring, and when they come up with a resolution suggesting what their citizens require, that it's not the province or the trial court to go in and say, no, that's wrong, unless it's something that is very abusive. I have not heard one thing that shows that there is any sort of bad faith reason for doing this. It's all in the same – Well, abuse doesn't have to be under the law of bad faith. Well, it has to be abuse. Abuse would be taking something, not for negative reasons or whatever, but being excessive. Being a little greedy, wanting more than maybe is necessary, you know, with good intentions. Yes. Taking something when you don't have a need for it. We don't have a need today. I mean, really, that's what the cases are. And the case law suggests that a county board can reasonably anticipate the needs in the future. And the testimony was, as you'll see, if you go back through the testimony from Bruce Gould, who counsel has suggested was the director of transportation at the time, he felt that this was necessary to build it this way so there wasn't extra cost on the back end when it actually becomes. And, frankly, from personal experience, I've seen these bridges around the state all over the place. They're waiting for somebody to come in and make them whole. And I think they're waiting for a couple extra lanes. And I don't think that that's a problem. And in this case, I don't think it's a problem because we have the right to take, as you said, it's a constitutional right. We have the right to take this property for the reasons, for good reasons, and we believe that we have stated what those good reasons are. Well, I often say to my children, there's a big difference between needs and wants. And if you have children, you've probably said this before. I have children. And in this case, there's definitely a want, definitely a want, with an eye towards the future. But we have to decide whether there's a need. I have to disagree, Your Honor, that it's not whether it's a need, it's whether or not it's something that is reasonably anticipated. And that's, I believe, what that is. Why do we say it is? I appreciate your answer. One minute. Any other questions? I don't believe there are. Thank you, counsel. Thank you very much. Thank you, counsel, both, for your fine arguments in this matter. This afternoon, it will be taken under advisement, and a written disposition shall issue on the case.